OPINION OF THE COURT
Joseph Harris, J.
On February 21, 1985, respondent Board of Education of the Harpursville Central School District (hereinafter referred to as the Board) preferred disciplinary charges of incompetence and insubordination, with diverse specifications thereunder,[1] against petitioner, a tenured teacher who had been employed as a secondary school teacher in the Harpursville Central School District for 25 years.[2]
At the request of petitioner, a three-member Hearing Panel was convened by the respondent Commissioner of Education, pursuant to Education Law § 3020-a (hereinafter referred to as the 3020-a panel), and 8 NYCRR part 82, to hear and determine said disciplinary charges.
Education Law § 3020-a provides for a three-member panel to hear disciplinary charges against tenured teachers. Two of the panel members are chosen respectively by the board of education preferring charges and by the teacher, from a list maintained by the Commissioner of Education as provided by diverse educational, management and teacher organizations throughout the State; the other panel member, denoted the chairman, is selected by agreement between the panel members selected by the involved board of education and the teacher from a list of arbiters supplied to the Commissioner of *465 Education by the American Arbitration Association, and in the event that these two panel members fail to agree upon a chairman, by the Commissioner of Education. The panel chairman receives as compensation the normal and customary fee paid for the services of an arbiter under the auspices of the American Arbitration Association; the other two panel members receive a per diem limited to the sum of $50 for each day of actual service. The aforedescribed compensation of the panel members is not paid by either of the parties to the proceeding, but from a fund established and maintained by the Commissioner of Education.
Five years quickly sped by, during which 48 days (the last of which was May 23, 1988) were consumed in the taking of testimony, - and during which five-year period the petitioner was suspended with pay.
On May 22, 1990, the tenure panel’s majority and dissenting opinions were released, revealing unanimity that petitioner was not incompetent in the sense that she was fully capable of being a good teacher if she so desired, but splitting 2 to 1 on the diverse specifications of neglect of duty and insubordination, the majority — consisting of the chairman and the panel member selected by the Board — finding her guilty and recommending termination, and the third panel member — selected by the petitioner — finding her "not guilty” of the major specifications and guilty only of minor infractions, and recommending only that a letter of reprimand and caution be served on petitioner and placed in her personnel file. On May 29, 1990, the Board adopted the tenure panel’s majority decision and terminated petitioner’s employment.
In the meantime, by letter dated May 25, 1990, respondent Stafford, the panel member selected by petitioner, revealed to petitioner’s attorney that he had discovered that respondent McLean, the panel member selected by the Board, had received from the Board, all during the pendency of the Education Law § 3020-a hearing, an additional per diem payment of $100 per day, over and above the $50 a day prescribed by law and payable from a fund maintained by the Commissioner of Education. Panel member Stafford also informed petitioner’s attorney that panel member McLean had informed him that he, McLean, had ex parte communications respecting the case during its pendency. Neither the names of the person or persons with whom Stafford alleged McLean had had ex parte conversations, nor the content of same, are set forth by petitioner.
*466 Respondent Board and respondent McLean admit that respondent McLean had in fact requested the payment to him by the Board of an additional per diem stipend of $100 as a condition of his serving as a penal member, in addition to and over and above the $50 prescribed by law, and that the respondent Board did in fact make such payments, amounting overall to the sum of $5,700 over and above that to which McLean was entitled under Education Law § 3020-a. Respondent Board and respondent McLean deny any ex parte communications during the pendency of the case. This latter issue was never developed by the petitioner in any papers before the court and is accordingly not ripe for resolution. Although a hearing could be directed to develop the issue, in light of the court’s view on the overpayment issue, and the allegations of bias and failure of due process deriving therefrom, the court deems it unnecessary to address the issue of ex parte communications, and accordingly does not.
JURISDICTION AND VENUE
The issue of this case is not whether the record of the hearing contains substantial evidence in support of the majority findings of the panel — in which event the case would have to be transferred to the Appellate Division — but whether or not an intrusion into required procedural due process occurred, sufficient to taint the result, regardless of the quantum of evidence produced on the substantive issues of the case, in which event the issue is whether or not the majority findings and recommendation of the 3020-a panel, and the resultant action by the respondent Board of Education, are thereby rendered arbitrary and capricious, a question initially for a court at nisi prius. (See, CPLR 7803 [3].)
Venue in Albany County is dependent upon whether or not, under the circumstances of this case, the Commissioner of Education is a proper party respondent. Here there is no determination of the Commissioner sought to be reviewed, nor any allegation that he failed to fulfill any of his statutory responsibilities. However, it is the Commissioner of Education who convenes Education Law § 3020-a hearings and has supervisory power over same. It has been held that where a judicial decision contains a line of conduct to be carried out by the Commissioner of Education, he is a proper party to be joined as a party respondent. (Matter of Sandor v Nyquist, 45 AD2d 122 [3d Dept 1974].) Such is the case here. Accordingly, the *467 motion to remove the Commissioner as a party respondent is denied, and venue in Albany County is proper.[3]
THE FACTS
Respondent Board and respondent McLean, while admitting that Board-selected panel member McLean requested and received from the Board additional compensation over and above that prescribed by law, contend that bias cannot be presumed from such facts, and that in order to prevail, petitioner must show actual bias. The court disagrees!
Petitioner contends that the action of respondent McLean in requesting additional compensation not authorized by law, and the action of the respondent Board in paying same, constitutes bias per se, or presumed bias, undermines the impartiality of the Hearing Panel, is destructive of the due process of law and a fair and impartial hearing to which petitioner was entitled, and that actual bias need not be shown. The court agrees!
Were this case in the context of a criminal jury trial, and a "well-meaning” prosecuting attorney sought to supplement the income of a financially needy juror, "with no strings attached”, there is no doubt that a conviction would have to be set aside, even without a showing of actual bias. Neither is there doubt here!
Initially, the court dispels the misapprehension in educational circles, if such in fact exists, but has nevertheless been set forth in the argument of counsel for respondents, that a section 3020-a hearing is, and is intended to be, something other than a fully impartial fact-finding hearing, and that the panel members selected respectively by the Board of Education and by the teacher are advocates for the party respectively selecting them, with only the chairman intended to be impartial.
Even though the panel selection process gives both the Board and the teacher the opportunity to select a panel member generally receptive to their respective perspectives, the process is not the equivalent of the anointment of a champion. A section 3020-a hearing is a fact-finding hearing, not a joust. Nothing contained in Education Law § 3020-a *468 argues to the contrary. Education Law § 3020-a goes to great lengths to assure the impartiality of the hearing and each of the three panel members, and to assure that procedural due process is had. Thus the statute (§ 3020-a [c]) prohibits any of the three panel members from being resident in or employed in the geographical territory under the jurisdiction of the board of education preferring the charges, and requires that the tenured teacher "shall have a reasonable opportunity to defend himself and an opportunity to testify in his own behalf’ (which rights would have little meaning if any of the panel members were permitted to be advocates), that each party shall have the right to be represented by counsel, to subpoena witnesses and to cross-examine witnesses, that all testimony be taken under oath, and that a stenographer be present to keep and transcribe a record of the proceedings. In addition to the above, the compensation paid to the three panel members — the panel chairman once again receiving the normal and customary fee paid for services of an arbiter under the auspices of the American Arbitration Association, and the other two panel members limited to the sum of $50 for each day of actual service — is paid not by either of the parties to the proceeding, although selected by them, but from a fund established and maintained by the Commissioner of Education.
These are the trappings of what is commonly known as "due process of law”. The right to due process of law applies not only to judicial proceedings, but to administrative proceedings as well. (Matter of Conley v Ambach, 93 AD2d 902 [3d Dept 1983]; US Const 5th, 14th Amends.) While the power of a court reviewing the substantive determination of an administrative agency is strictly limited and relatively minuscule, the duty and power of a court to assure that the determination was procedurally made with regard to due process of law is formidable.
A biased decision maker is constitutionally unacceptable. (Withrow v Larkin, 421 US 35, 46-47.) Call it bias, or lack of due process, or lack of fundamental fairness, it is all the same, and violative of the American idea of justice.
Bias may be conscious or unconscious. In either case it is to be abhorred. If it is conscious, then the result is invalid per se. If it is unconscious, it produces a result, the fairness and justness of which we cannot be sure. In either case it is not acceptable.
*469 "Due process” is just what its name signifies — a process. It is a blueprint for fairness — a set of directions designed — in this case by the Legislature itself — to assure, hopefully, that a just result is reached. Failure to strictly adhere to this blueprint may result in injustice, or at the least, uncertainty of justice.
By analogy, if one wishes to travel from Albany to New York City, there are scores of roads and detours that could be taken, but ultimately one would know that he had arrived in New York City, for there would be a signpost stating New York City.
There are no signposts stating "Justice”, or "Fairness”, or "Truth”. If, in a judicial proceeding, or in a quasi-judicial administrative proceeding, one deviates or detours from the procedural directions established by law — that is, from due process — he can never be sure that the destination arrived at is the destination sought.
It is difficult enough, even with due process, to assure that a result is fair and just; without it, it is impossible.
Due process transcends the "honor” of men. "Trust me” is a phrase not found in its lexicon. Respondents declare that panel member McLean, despite the fact he requested of and received from a party to the proceeding, payments not authorized by law, is an "honorable” man, and would not permit the additional stipends to diminish his impartiality — and so it may be — but then again, may not be. Liberty and justice are too valuable to be subject to a game of Russian roulette.
Once due process is lost it can never be regained. Not "all the King’s horses and all the King’s men”[4] can put it together again. Nor can judicial review of a lengthy and intensive transcript substitute for what due process is intended and designed to do — to guarantee a fair and impartial hearing and a fair and impartial determination of the issues. Only fair and impartial triers of the facts can do this.
The majority opinion of the panel itself supports the position that a reading by the court of the substantive transcript cannot substitute for a lack of procedural due process, even though the majority panel members and the respondent Board of Education now argue to the contrary. States the majority opinion: "It is not possible to make credibility findings by a mere reading of a transcript.” This refers to demeanor obser *470 votions available only to panel members. And quoting from 5 Wigmore, Evidence (§ 1395, at 153 [Chadbourn rev 1974]), the majority opinion further states: "The Panel members are the only ones in a position to 'obtain the elusive and incommunicable evidence of a witness’ deportment while testifying’.” In this hotly contested proceeding, where credibility was the key issue, this is all the more reason that we must be assured that panel members are not in any way subject to bias, or any factor other than the evidence.
There is in this case a gnawing feeling that a fair and impartial hearing may not have been had — at least we cannot be sure. A unanimous decision might have left us with a less gnawing feeling. But in this split decision, the vote of panel member McLean was crucial.
He who pays the piper calls the tune![5] While in a given case this may not in fact be true, in all cases it has the appearance of truth. This, combined with the curious misapprehension that in Education Law § 3020-a hearings the panel members selected by the Board is the "Board’s representative”, and the panel member selected by the teacher is the "teacher’s representative”, and only the chairman is expected to be neutral and impartial, go a long way in creating that gnawing feeling.
Due process ought not to leave one with a gnawing feeling, but with a feeling of satisfaction that all has been done that can be done to assure a valid and just result.
Fairness and due process have an independent life of their own. Even absolute substantive certainty does not forgive procedural unfairness. And in a larger sense, absolute substantive certainty, absent fairness or procedural due process, is no more than a hypothetical concept, because a result cannot be substantively certain without fairness or procedural due process.
In addition to all of the above, it may well be that payment to panel member McLean by respondent Board of the additional compensation for services of $100 per day, constitutes said panel member an employee of the Board, in direct contravention of Education Law § 3020-a, and once again destructive of required standards of due process of law.
*471 CONCLUSION
Respondent Board alleges that the conduct of petitioner teacher was outrageous; this is affirmatively echoed by the two majority panel members, and contradicted by the third panel member. Whether or not it was outrageous does not excuse a failure of due process in its determination.
There are many things outrageous in this case. The court notes that the fact it took five years to resolve this case— during all of which time the petitioner was paid not to work— probably a total of upwards of $150,000 — is likewise outrageous. Outrageous also is the fact that the panel member selected by the Board — himself a former Superintendent of Schools — would deign to condition his services on payment by the Board, a party to the proceeding, of additional moneys not authorized by law, just as it is outrageous that the respondent Board in fact deigned to pay the additional sums requested— amounting overall to $5,700 — although unauthorized by law.
It may be that a per diem of $50 (paid by the Commissioner of Education), which is the maximum sum authorized by law for the services of a panel member (other than the chairman), is inadequate in this day and age to obtain the services of a panel member, but that is a question that must be addressed to the Legislature, not to be obviated by additional secret payments by the parties, the fact of which was never even placed upon the record. If the panel member was unable to serve for the sum authorized by law, he ought to have followed the simple expedient of refusing the assignment, and the Board should have followed the simple expedient of selecting a different panel member.
And outrageous it is that, after five years and the expenditure of hundreds of thousands of taxpayer money, we are back to square one. But back we must go. If the price be high, the commodity involved — fundamental fairness — is priceless. And, if heeded, the lesson taught here — that administrative agencies, whether they be the educational establishment or another agency, are not above the law but must strictly follow the procedures and strictures provided by law — is well worth the price.
We do not say that the involved panel member was in fact biased. We say only that his action, and the parallel action of the respondent Board, has wrongfully placed us in a position where we can never know, and is fraught with too much danger of bias to be excused.
*472 The failure of due process caused by this action renders the majority determination and recommendation of the 3020-a panel, and the resultant determination and action of the respondent Board of Education, terminating petitioner’s employment, arbitrary and capricious. Accordingly, said determinations, recommendations, and actions are annulled, vacated and set aside, and petitioner is restored to her employment as a tenured teacher in respondent Board’s district, with all back pay and benefits. The charges heretofore preferred against the petitioner, however, are not dismissed and remain in full force and effect, and the court orders that a new hearing be held, and new testimony be taken.[6] *8 Under the circumstances of this case, due process further requires that an entirely new Hearing Panel be convened and the Commissioner of Education is ordered to do so. Costs, disbursements and attorneys’ fees are denied.

. All of which are serious matters, but not violent in nature.

. Petitioner had also for many years served as union president, and there was evidence of inimical teacher-management relations.

. Hereinafter, inasmuch as the Commissioner of Education is only a passive party respondent, wherever the decision refers to the allegations, contentions or position of the "respondents”, unless specifically named, it is not intended to include the Commissioner of Education.

. Popular children’s rhyme.

. Derived from William Congreve (1670-1729), Love for Love (1695) (act II, scene 2): "I warrant you, if he danced till doomsday, he thought I was to pay the piper.”

. By way of dictum, this court fervently hopes that it will not take another five years to resolve this case. Such awesome delay does not well serve the best interest of the taxpayers of the respective school districts, nor the intended ultimate beneficiaries of our education system — what it’s all about — the school children of our State. The court suggests that the Commissioner of Education examine inordinate delays in Education Law § 3020-a proceedings, and exercise tighter supervision of such proceedings, with the aim of reducing such delay, commensurate with the requirements of due process, of course.