OPINION OF THE COURT
Joseph Harris, J.
Petitioner, by CPLR article 78, moves for an order of this court annulling a determination by respondent imposing upon *1009 petitioner a two-day academic suspension and suspension from the wrestling team for the balance of the wrestling season.
THE FACTS
Petitioner is a senior at South Colonie Central High School. He maintains an outstandingly high level of academic achievement.[1] Prior to the events hereinafter delineated, he was a member of respondent’s varsity wrestling team, of State championship, and potential Olympic, caliber. He is 17 years of age.
It is not disputed that on February 11, 1992, while a spectator at a junior varsity wrestling match at South Colonie Central High School, petitioner, among others, entered the school cafeteria and stole approximately eight packages of muffins, which he brought to the locker room and gave to members of the junior varsity wrestling team. When the incident was discovered, and petitioner was advised of the charges, he freely and contritely admitted to his wrestling coach and to the South Colonie Director of Athletics that he had indeed stolen the muffins.
*1010 As a result of this misconduct, there was imposed upon petitioner by the high school Building Principal, an academic suspension of two days, together with "social probation” for the remainder of the school year. The precise language of the letter, from the Building Principal to petitioner’s mother, dated February 13, 1992, notifying petitioner of this punishment is crucial:
"February 13, 1992
"Mrs. Geri Ann Laiacona
137 Sand Creek Road
Albany, New York 12205
"Re: Matthew Manico — Gr./Sec. 12-08
"Dear Mrs. Laiacona,
"The purpose of this letter is to confirm our conversation regarding the suspension of your son, Matthew for two (2) days, beginning Thursday, February 13 and ending Monday, February 24.
"This action was necessary because Matthew was involved in the theft of school property. He has also been assigned to Social Probation. A review of this probation will be scheduled in one month.
"Although the suspension is for a temporary period, it is a serious matter. During the period of suspension, your child may not attend school, visit any other school or attend any extra-curricular school functions such as dances, athletic events, etc.
"Matthew may return to school Monday, February 24. If you have any questions concerning this matter, please contact Mr. Sauter’s office at 459-1220 ext. 466.
"Sincerely,
South Colonie School District
(Signature)
Hal M. Sauter
Associate Principal
(Signature)
Albert Aldi, Ed.D.
Principal”.
*1011 It is clear from this letter that the total punishment imposed upon petitioner by a person authorized to do so (see, Education Law § 3214)[2] consisted of academic suspension for "two (2) days, beginning Thursday, February 13” (and presumably ending at the close of school on Friday, February 14),[3] together with "Social Probation.” Further, recites the letter: "During the period of suspension, your child may not attend school, visit any other school or attend any extra-curricular school functions such as dances, athletic events, etc.”
However, the affidavit of the Athletic Director of the South Colonie Central School District, dated February 26, 1992, recites that in addition to the academic suspension imposed by the Building Principal, he, the Athletic Director, on February 12, 1992, determined that petitioner’s conduct was contrary to the provisions of the "Interscholastic Regulations” and the "Player Code of Conduct”, both contained in a document entitled "Interscholastic Athletic Guide”, and as a result thereof he orally suspended petitioner "from further participation in the wrestling program for this sport season.”
The Athletic Director contends that the Building Principal, Associate Building Principal, and petitioner’s wrestling coach concurred in this determination. If so, it is passing strange that no mention of this "additional suspension” is made in the Building Principal’s letter of February 13, 1992. Thus, from the papers before this court, it is crystal clear that the suspension of petitioner from further participation in the *1012 school’s wrestling program for the balance of the wrestling season was a decision made solely by the Athletic Director and imposed solely by him.
Inasmuch as the Section II wrestling semifinals were scheduled for the weekend of February 21, petitioner’s father, contending that, under the circumstances, petitioner’s suspension from participation in the wrestling sectionals, and hopefully in the forthcoming State championships, was arbitrary and capricious, grossly disproportionate to the offense committed, and would constitute the death knell of petitioner’s chances to obtain a college education through an athletic scholarship, sought review of the suspension decisions through the internal administration of the school district and was confronted with the following: The Athletic Director was unavailable during the intersession; the Superintendent was out of town; the School Board would not review the matter until it had been reviewed by the Superintendent; and the Assistant Superintendent informed petitioner’s father that the matter was out of his hands. Understandably feeling a sense of frustration, and the irreparable harm sought to be avoided drawing imminent, petitioner commenced this article 78 proceeding and sought and obtained a temporary restraining order.
THE LAW
The issues of this case are divisible into two separate and distinct parts — firstly, the extracurricular activity suspension, and secondly, the academic suspension.
Education Law § 3214, which governs serious academic suspensions, mandates a full hearing where the suspension is for greater than five days. Said statute does not, however, mandate a full hearing where the deprivation is of a "tangential extracurricular privilege”, but even so, such deprivation may not be "on the basis of fiat. To justify such action, there must be a legal basis for disciplinary action which must be neither arbitrary, capricious nor unreasonable (Matter of Port, 9 Ed. Dept. Rpr. 107). While a full 'due process’ hearing is not mandated * * * whatever procedure is adopted by respondent *1013 must be basically fair, granting to the student and the person in parental relation to him an opportunity to appear informally before the person or body authorized to impose discipline and to discuss the factual situation underlying the threatened disciplinary action. Such would be an administrative not adversary proceeding” (Matter of O’Connor v Board of Educ., 65 Misc 2d 40, 43 [emphasis added]).
Even though administrative due process respecting the deprivation of tangential extracurricular privileges may require somewhat lesser standards than the full hearing provided for by Education Law § 3214, nevertheless there are certain minimal standards that are required, as emphasized above: The fountainhead for such action must contain a legal basis for the action, and a legal designation of a person or body authorized to impose the proposed discipline (as well as a fair and reasonable opportunity for the student to be heard). It is on these grounds that the position of the respondent fails.
As the source of the power to suspend petitioner from participation in the school’s wrestling program, respondent points only to a publication entitled "Interscholastic Athletic Guide.” Standing alone this publication has no legal force. It becomes legally viable only when and if it is duly adopted by the governing body of the school district — the Board of Education. Respondent candidly admitted that it was unable to produce the minutes of any Board meeting, or other evidence, reflecting that the "Interscholastic Athletic Guide” was ever duly adopted as the policy of the South Colonie Central School District, if in fact it ever was so adopted. No less so than with any other government agency, "minimal due process standards” for the educational establishment do not equate with "no standards.” An aggrieved student may not be forced to rely on the amorphous good faith of school authorities, but is entitled at least to some institutionalized, though less expansive standards, to regulate his relationships with said school authorities, to the end that his rights will ultimately depend on the discipline of law and not the vagaries of man. (See, Matter of Syquia v Board of Educ., 149 Misc 2d 463, affd 180 AD2d 883 [3d Dept, Feb. 13,1992].)
Even if the "Interscholastic Athletic Guide” had been duly adopted by respondent’s Board of Education as the policy of respondent, said "Guide” would still fail to provide minimal due process standards in that nowhere does the "Guide” designate the person or body authorized to determine transgressions of the "Guide” and to impose punishment therefor. *1014 Specifically it does not authorize the Director of Athletics to do these things. The closest the guide gets to resolution of this issue is paragraph "C” of the "Principals of the Interscholastic Program”, which reads as follows:
"To utilize fully the potential in athletics for educational experiences, the interscholastic athletic program * * *
"C. Is subject to the same administrative control as the total education program.”
This would appear to invoke section 3214 (3) of the Education Law (see, n 2, supra), which invests disciplinary power in the Board of Education, the Superintendent of Schools, or the Building Principal where the power is delegated by the Board of Education by a duly adopted bylaw, as the School Board’s action arm for matters concerning extracurricular activities. An Athletic Director is not a specified disciplinary authority under Education Law § 3214 (3).
The "Guide” is further ambiguous as to what constitutes a transgression. Mostly, it pertains to poor sportsmanship on the field. Other than that is only the cryptic category under "Interscholastic Regulations”, entitled "School Behavior”, which recites: "Good citizenship is expected of an athlete at all times. Behavior such as fighting, vandalism, use of tobacco, alcohol and drugs, cutting class or school, not completing school work assignments or a behavior which casts an adverse reflection on our program can result in varying degrees of penalty. A penalty may range from a one-game suspension to permanent suspension for that sport season or the school year.” (Emphasis added.) Even this indicates behavior only as it specifically reflects adversely on the school’s sports program. Petitioner’s theft of the muffins, though not to be condoned, in no way reflects adversely on South Colonie Central High School’s sports program any more than if the theft occurred outside of school premises.
Significant also is the category in the "Guide’s” "Interscholastic Regulations” delineated "School Suspension”, which recites: "Athletes who are externally suspended from school will not be permitted to practice, play in a game, or participate in any way during their suspension.” This is the only mention of extracurricular activity suspension for adverse activity not directly related to the school’s athletic program. And under the circumstances of this case (see, Building Principal’s letter, Feb. 13, 1992, supra), that would appear to be limited to the two days of February 13 and 14.
*1015 It is not the purpose of this court to superimpose its judgment upon that of respondent (see, Matter of Pell v Board of Educ., 34 NY2d 222), but only to assure that such judgment is made in the salutary atmosphere of due process. Education Law § 3214 (3) wisely places final disciplinary decisions in the hands of school authorities with general, over-all educational responsibilities such as school boards, superintendents and principals, not persons insularly involved in only one aspect of the education process, such as sports.[4] Only in this way can an integrated decision be made — one that fairly and reasonably considers both the best interest of the student as well as the best interest of the institution. This Athletic Director may be a paragon of wisdom; he may be endowed by his Creator with superhuman insight and judgment-making ability. But somewhere there surely must be an Athletic Director who is not such a paragon, nor so well endowed.
Due process is not "result-oriented.” Rather it is "process-oriented”, relying upon a legally established, fair process, to achieve a just result. As true today as it was 60 years ago is the declaration of the Court of Appeals: "Forms and procedure still have their place and purpose in the administration of the law; without them we would have chaos.” (People v Zambounis, 251 NY 94, 97.)
Respondent has been less than punctilious respecting its adherence to fundamental principles of due process. Not only did it fail in the first instance legally to adopt a policy for the situation involved here, and permitted its employees to act without jurisdiction, but in the final analysis it failed to act at all timely to protect petitioner’s right to be heard in redress of his grievance.
Assuredly, it was intersession. Many of its key employees, including the Superintendent, were out of town. The school was on holiday. But due process never takes a holiday!
The School Board refused to act until the Superintendent, who was unavailable, reviewed the matter. The Assistant Superintendent declined to enter the fray. But in the final analysis it is the Board of Education that is the repository of all power, and of all obligations, and where no one else will act, the Board must act.
*1016 The hours are long and the pay nonexistent, but a School Board may never "pass the buck”, may never shirk its ultimate responsibility to maximize the potential of each student to serve his community. And where its authorized employees are unavailable to listen to the emergency pleas of residents of the School District, it is the duty of the School Board to listen. The tragedy here is, that at the critical times involved, due process failed, and there was no one to listen.[5]
Untold numbers of students pass through our school system into the outer world every year. Most of them are fated to live lives of complete anonymity. To only a few is given the brief opportunity to achieve greatness — a momentary point in time when heroes clash, and mortals, by extraordinary efforts, rise above the normal capabilities of humankind to achieve a once and only measure of immortality. Petitioner is one of them, and he is all of them.[6]
This case is not about muffins; it is about due process and jurisdiction (see, CPLR 7803 [2], [3]). For all the reasons set forth above, respondent was without jurisdiction respecting the mode in which the extracurricular athletic suspension was imposed, as a result of which the imposition of the extracurricular athletic suspension was arbitrary and capricious and must be, and hereby is, annulled.
Respecting the other prong of this article 78 proceeding— the two-day academic suspension and its concomitant two-day social and extracurricular activity suspension — jurisdiction was properly conferred by section 3214 (3) of the Education Law, punishment was imposed by a presumably authorized person (the high school Building Principal), due process procedures were available and complied with, and there was a rational basis for the action taken (see, Matter of Pell v Board of Educ., supra). Accordingly, with respect to the academic suspension and the limited extracurricular suspension con *1017 tained therein for the duration of said academic suspension, the petition is dismissed.[7]

. The day before his suspension he received the following letter:
"colonie central high school
South Colonie Central Schools
One Raider Blv.
Albany, New York 12205
(518) 459-1220
"February 12,1992
"Matthew Manico
137 Sand Creek Rd.
Albany, NY 12205
"Dear Matthew,
"I would like to take this opportunity to congratulate you upon your outstanding academic performance during the second marking period. As a high honor roll student you have demonstrated a personal commitment to excellence in your classroom. I am confident that you will continue to demonstrate this high level of achievement in the future.
"The faculty and staff of Colonie Central share the pride that you and your family feel regarding this accomplishment. Once again, Congratulations!
"Sincerely,
(Signature)
Al Aldi, Ed.D.
Principal”.

. Education Law § 3214 (3) recites in pertinent part:
"Suspension of a pupil, a. The board of education, board of trustees or sole trustee, the superintendent of schools, or district superintendent of schools may suspend the following pupils from required attendance upon instruction * * *
"b. The board of education, board of trustees, or sole trustee may adopt by-laws delegating to the principal of the district, or the principal of the school where the pupil attends, the power to suspend a pupil for a period not to exceed five school days.”

. The reference to Monday, February 24, was occasioned by the fact that the school week commencing Monday, February 17, was an intersession, when school was closed. Thus the reference is irrelevant and the termination of the two-day suspension was effectively the close of school on Friday, February 14.

. By rough analogy, in the outside world a policeman — though his job’s important — is merely an accuser; entities with broader responsibilities, namely, juries and Judges, respectively — make the determination of guilt or innocence, and if the determination is guilt, the appropriate punishment therefor.

. This does not mean that a complaint must be honored, nor an action reversed — but it does mean that a grievant must have a right to be heard. Anything that derogates from this right is antithetical to due process.

. Wrestling, like long-distance running, is a lonely sport, requiring the ultimate of internal discipline. Unlike most sports, a wrestler must not only conquer his opponent, but himself as well. During the pendency of this proceeding, pursuant to the court’s temporary restraining order, the petitioner went on to win his sectional competitions and to win second place in his weight category in the State championships, the first ever to do so from the County of Albany.

. With respect to the academic suspension the petition would he dismissable for failure of the petitioner to exhaust administrative remedies, which though not immediately available, did not involve irreparable harm, and are available now. However, petitioner concedes the justness of the academic suspension and its limited concomitant social and extracurricular suspension during its duration. Thus the court, finding the measured and well-tailored academic suspension to have a rational basis that would survive future administrative and judicial attacks, has chosen to dismiss that portion of the petition related to the academic suspension on its merits and to end the controversy now.