*763 OPINION OF THE COURT
W. Patrick Falvey, J.
Petitioner, James Sutterby, as parent and natural guardian of Jon Sutterby brings this application by order to show cause dated January 27, 1993, under CPLR article 78, seeking an order in the nature of mandamus directing Nancy Zimar, as Superintendent of the Dundee Central School District to forward, with her signature, the "request for waiver” pursuant to rule 29 of the eligibility standards as contained and adopted in the 1992-1994 New York State Public High School Athletic Association (NYSHSAA) Handbook, upon the basis that the Superintendent’s failure and refusal to sign and forward said waiver was made in violation of lawful procedure, was arbitrary and capricious and an abuse of discretion.
Arguments were had on February 1, 1993.
Petitioner alleges that Jon Sutterby who spent his 9th and 10th school years at Dundee Central School transferred to Notre Dame High School in Elmira, New York beginning in the fall of his 11th year. He played football and was on the basketball team for Elmira. However, for financial reasons he could not continue after the fall semester.
Therefore, on January 11, 1993, he enrolled at Dundee and wanted to play basketball at Dundee. However, in order to do this, he had to apply to the section five eligibility committee for review and determination of his eligibility as a transfer athlete pursuant to rule 29.
The Superintendent, as chief school officer, must sign a required waiver which certifies that the student has transferred to his present school, i.e., Dundee Central School, without inducement or recruitment or to seek an athletic advantage.
The respondent Superintendent refuses to sign said certification in that it would be unfair to other students in the school who may have tried out and been cut from the team.
Petitioner alleges that there is no local School Board policy concerning transfer students regarding athletics, and because of this the Superintendent should sign the waiver certification so the petitioner’s transfer eligibility can be considered. Petitioner claims respondent’s refusal is unfair and arbitrary. Petitioner also agrees that the Board of Education can impose stricter rules for athletic transfers if it desired.
Respondent argues that the Superintendent is under no *764 obligation to sign the transfer waiver certification. Thus, mandamus does not apply.
Before this court may address the merits it first must examine whether or not the petitioner has exhausted his administrative remedies, and if not, must he, before bringing this article 78 proceeding.
This court agrees that there are no administrative remedies through the transfer procedure, for, in order to first get to that procedure, all paperwork must be in order and accepted and this will not happen if the waiver certification is not signed by respondent Superintendent and forwarded to the eligibility committee.
However, CPLR 7801 provides: "Except where otherwise provided by law, a proceeding under this article shall not be used to challenge a determination: 1. which is not final or can be adequately reviewed by appeal to a court or to some other body or officer.” This requirement of exhaustion of remedies conserves judicial resources, and "affords the agency with jurisdiction an opportunity to exercise its expertise in the specialized area in question.” (8 Weinstein-Korn-Miller, NY Civ Prac ¶ 7801.05, at 78-27.)
There are exceptions to this general rule. Of interest here, "[Mjandamus to compel performance of a ministerial duty involving no exercise of discretion need not await completion of administrative action, although a demand and refusal may be a prerequisite to the action * * * a petitioner is not required to resort to and exhaust available alternative remedies where those remedies are futile; that is, rendered ineffectual because of delay, hardship, or clear indications that the respondent has already determined the outcome of those proceedings. In applying this principle, the court must carefully analyze each situation in light of its particular facts, balancing the general policy that an Article 78 be used only when other available remedies have been exhausted against the need to afford an adequate remedy to a petitioner aggrieved by unlawful official action.” (Id., at 78-29 — 78-31.)
The court believes that the Superintendent’s signing of said waiver can be deemed more than a ministerial duty. It clearly calls for an exercise in discretion.
Here, petitioner has made no mention of any effort to appeal his case to the Dundee Central School Board. It should be noted, however, that in response to a letter to the Superintendent, respondent’s attorney wrote that the Superintendent *765 had sought the advice of the School Board in her refusal to sign the application for a waiver.
Education Law § 1711 (3) states: "Such superintendent shall be under the direction of the board of education, which shall prescribe [her/]his powers and duties”. Furthermore, the board has the power and duty "[t]o have in all respects the superintendence, management and control of said union free schools” (Education Law § 1709 [13]) and the board has the power and duty "[t]o have in all respects the superintendence, management and control of the educational affairs of the district, and, therefore, shall have all the powers reasonably necessary to exercise powers granted expressly or by implication and to discharge duties imposed expressly or by implication by this chapter or other statutes.” (Education Law § 1709 [33].) All these sections apply both to union free schools (Education Law art 35) and to central schools as well, by authority of Education Law § 1804 (1).
It appears, therefore, that the Dundee Central School Board did have the power to review this determination of Superintendent Zimar.
Thus, this court must decide whether the petitioner would have been required to exhaust his remedies by first going to the Dundee School Board before making the application at bar.
Although the letter above mentioned states that the Superintendent consulted with the School Board, there is no proof that there was ever any meeting between petitioner and the Board or any attempt to have one, wherein petitioner could formally plead his case directly to the Board. Also, the letter is not a sworn statement, so the court cannot give it the same weight as a sworn statement. Nor is that letter a statement made directly by the Superintendent concerning her consultation with the School Board, but is a secondhand essentially hearsay statement made by respondent’s attorney. It is not known which School Board members were consulted, what they were told, etc. For these reasons this court can conclude that to go to the Board would not be futile. The letter is not a "clear [indication] that the [school board] has already determined the outcome of those proceedings” (8 Weinstein-KornMiller, NY Civ Prac fl 7801.05, at 78-31).
The case of Manico v South Colonie Cent. School Dist. (153 Misc 2d 1008) is instructive, generally. That case involved the two-day academic and concomitant two-day social and extra *766 curricular activity suspension of a high school student for stealing muffins from the cafeteria. The student was a wrestler on the high school team and he was also suspended from the wrestling team by the school’s Athletic Director for the remainder of the season.
The wrestling suspension was imposed on February 12, 1992. Section II semifinals were scheduled for February 21, 1992. Petitioner tried to seek review of the Athletic Director’s determination through the internal administration of the School District, but was unsuccessful because the Athletic Director was unavailable during the school recess, which commenced just after the student’s suspension, the Superintendent was out of town, the School Board would not review the matter until it had been reviewed by the Superintendent, and the Assistant Superintendent told petitioner’s father it was out of his hands. Thus, in that case, petitioner showed the court an exhaustion of remedies, in that those remedies could not be had in a timely manner.
The court found that the Athletic Director had no authority to suspend petitioner from the team. He was acting under his interpretation of the "Interscholastic Athletic Guide”. This publication was never duly adopted by the Board of Education as the policy of the school, thus it had no legal force. The court further found that even if it had been adopted, it did not provide for minimal due process since it did not designate the person or body authorized to determine transgressions of the guide and to impose punishment therefor. It did not so authorize the Director of Athletics.
The court stated: "[I]n the final analysis it is the Board of Education that is the repository of all power, and of all obligations, and where no one else will act, the Board must act.” (Supra, at 1015.)
Although time is of the essence in the case at bar, unlike the petitioners in Manico (supra), the petitioner herein did not exhaust the available administrative remedy of petitioning the School Board to require the Superintendent to sign the waiver. There are no proper allegations that the School Board was approached by the petitioner and that it refused to act. Thus this remedy is still available. Therefore, this matter should have been presented to the Dundee Central School Board for a determination before making application to the courts.
However, in fairness to the petitioner, the Dundee School *767 Board should convene with all deliberate speed, upon receipt of petitioner’s request in order to consider same.
The petitioner’s application to the court is premature. For the court to do otherwise would create the possibility that any decision by a school superintendent, especially in an area where there is no formal Board of Education policy, could be subject to an article 78 application without first being reviewed by the particular school board.
The petition is therefore dismissed without prejudice and without costs.